**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DIANNE LYNN STARIN, | ) | CASE NO. 1:16CV01684 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Dianne Lynn Starin ("Plaintiff"), challenges the final decision of Defendant,

Nancy A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner"), denying her

application for Disability Insurance Benefits ("DIB") under Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction

pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate

Judge pursuant to an automatic referral under Local Rule 72.2(b) for preparation of a Report and

Recommendation. For the reasons set forth below, it is recommended that the Commissioner's

final decision be AFFIRMED.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social
Security.

1

# I. PROCEDURAL HISTORY

On August 10, 2011, Plaintiff filed an application for DIB alleging a disability onset date of September 26, 2009 and claiming she was disabled due to post-traumatic stress disorder and depression. (Transcript ("Tr.") 349). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 166, 177, 182). On February 5, 2013, Plaintiff amended her alleged onset date from September 26, 2009 to August 27, 2011. (Tr. 326).

On February 8, 2013, Plaintiff appeared at a hearing before an ALJ. (Tr. 182). On April 8, 2013, the ALJ issued a written decision finding Plaintiff was not disabled. (Tr. 191). On July 23, 2014, on Plaintiff's request, the Appeals Council granted review and, finding that the ALJ had erred, remanded the case to the ALJ. (Tr. 197-99). The ALJ was ordered to give further consideration to Plaintiff's maximum residual functional capacity and provide appropriate rationale with specific references to the record in support of the assessed limitations. (Tr. 198). The ALJ was further ordered to obtain evidence from a vocational expert to clarify the physical and mental demands of Plaintiff's past relevant work and the effect of the assessed limitations on Plaintiff's ability to perform past relevant work. (Tr. 198).

On January 21, 2015, the ALJ held a second hearing, during which Plaintiff, represented by counsel, and an impartial vocational expert ("VE"), testified. (Tr. 43). On March 3, 2015, the ALJ issued a written decision finding that Plaintiff was not disabled. (Tr. 18-37). On March 13, 2015, Plaintiff requested review by the Appeals Council. (Tr. 14-15). On May 11, 2016, the Appeals Council declined further review, making the ALJ's decision the Commissioner's final decision. (Tr. 1).

On June 30, 2016, Plaintiff filed her complaint challenging the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 12, 14, 15). Plaintiff asserts the following assignments of error:[2]

> (1) Whether the ALJ failed to properly evaluate the opinions of John Nickels, M.D., and Deepak Raheja, M.D., Plaintiff's treating physicians.

> (2) Whether Plaintiff's assigned residual functional capacity is contrary to law because it fails to include any limitations of Plaintiff's ability to use her hands and arms.

(Doc. No. 12).

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in 1961 and was fifty-three years-old on her date last insured, making her a individual closely approaching advanced age under social security regulations. (Tr. 35). She has a limited education and is able to communicate in English. (*Id.*) She has past relevant work as a convenience store clerk, sales clerk, and order clerk. *Id.*

### B. Medical Evidence

On December 9, 2011, Plaintiff had an initial pain assessment with Dr. Nickels. (Tr. 485). Based on a form filled out by Plaintiff, she began feeling pain in her upper right arm in March 2011 after having fallen. (Tr. 485). She described the pain as burning and stabbing and she rated her pain as a seven or eight out of ten. (Tr. 483). An MRI performed on December 14, 2011 revealed normal findings except for fluid in the suboracoid space and tendinosis of the rotator cuff. (Tr. 482).

---

[2] For the sake of clarity, the Court finds it more appropriate to address Plaintiff's assignments of error in reverse order.

Plaintiff points out that she sought treatment from Dr. Nickels office from 2011 to 2015; that she complained of aches, numbness, weakness, burning, and stabbing in her right arm; and that she consistently rated her pain at 5 to 9 out of 10. (Tr. 449, 451, 457, 461, 465, 469, 473, 476, 479, 507, 510, 514, 518, 522, 526, 530, 534, 538, 542, 546, 549, 553, 557).[3]

## C. Opinion Evidence

### 1. State Agency Reviewers

On September 27, 2011, state agency reviewer Kristen Haskins, Psy.D. estimated Plaintiff's intellectual functioning in the borderline to low average range. (Tr. 163). She opined that Plaintiff's symptoms would likely interfere with her pace and persistence, but that she would be able to work in a setting without sustained fast pace. (Tr. 163). Dr. Haskins further opined that Plaintiff's symptoms may interfere with work performance. Noting that she is able to cook,

---

[3] Plaintiff's counsel provides this long string citation, but does not describe the cited evidence in any detail. And, in general, counsel offers very little in the way of a facts section. Counsel is reminded that pursuant to this Court's initial order, "[a]ll facts relevant to the legal issues and discussion must be set forth in the 'Facts' section." (Doc. No. 6 at 3). Further, "[t]he parties are expected to fully and fairly present to the Court all relevant evidence in the record, both favorable and unfavorable." *Id.* at 4. In this case, counsel has not offered a fully comprehensive recitation of the facts. A long string citation, with little explanation as to the contents of the record, is not adequate. It is counsel's obligation, not the Court's, to identify and describe the record evidence that is relevant to the disposition of the appeal. Nonetheless, the Court has reviewed the pages contained in the string cite and notes that many of these citations are pain diagrams completed by Plaintiff during her office visits (Tr. 449, 451, 457, 461, 465, 469, 473, 476, 479), some are treatment notes prepared by a certified nurse practitioner (Tr. 514, 518, 534, 538, 542, 546, 549, 553, 557), and others are treatment notes prepared by a physician's assistant (Tr. 507, 510, 522, 526, 530). Three of these treatment records were signed by her treating physician Dr. Nickels. (Tr. 549, 553, 557).

clean and grocery shop, Dr. Haskins opined that Plaintiff would be able to work in a static setting without stringent time or production quotas.  (Tr. 164).

On March 5, 2012, Diane Manos, M.D., concluded that Plaintiff "is not severely restricted due to any physical impairment."  (Tr. 171-172).  Also on March 5, 2012, Bruce Goldsmith, Ph.D., opined that Plaintiff has mild restrictions in activities of daily living (Tr. 172); mild difficulties maintaining social functioning (Tr. 172); and moderate difficulties in maintaining concentration, persistence, or pace.  (Tr. 175).

### 2.  John Nickels, M.D.

On February 5, 2013, Dr. Nickels filled out a medical source statement on behalf of Plaintiff, which noted diagnoses of lumbar radiculopathy; pain in the right shoulder and arm; and chronic bursitis of the right shoulder.  (Tr. 495).  Identified symptoms included pain across the lower back; pain in the right shoulder with reduced range of motion; throbbing in right arm, and fatigue.  *Id.*  Dr. Nickels opined that Plaintiff can sit no more than an hour at one time and no more than two hours total in an eight-hour day; and that Plaintiff can stand/walk for less than two hours total in an eight-hour day.  (Tr. 496).  He further opined that with prolonged sitting, Plaintiff's legs should be elevated twelve inches for 75% of an eight-hour work day, due to back pain.  (Tr. 497).  Dr. Nickels opined that Plaintiff had significant limitations with reaching, explaining that Plaintiff's right shoulder pain and decreased range of motion made it hard to reach.  (Tr. 497).  He further opined that Plaintiff would likely be absent four or more days per month as a result of her impairments.  (Tr. 498).

### 3. Deepak Raheja, M.D.

On August 13, 2014, Dr. Raheja completed a medical source statement on behalf of Plaintiff. (Tr. 499). The listed diagnoses included cervical disc disease, lumbar disc disease, and carpal tunnel syndrome. (Tr. 499). Dr. Raheja opined that Plaintiff need to take unscheduled breaks six to eight times a day for thirty minutes each due to pain/paresthesia, numbness and adverse effects of medication (Tr. 500); that Plaintiff should never lift weight of ten pounds or more; that Plaintiff had significant limitations with reaching, handling, and fingering. (Tr. 501). Specifically, Dr. Raheja opined that Plaintiff could use either hand to grasp, turn, or twist objects less than 5% of an eight-hour day; that Plaintiff could use the fingers of either hand in fine manipulation less than 5% of the day; that Plaintiff could reach with either arm in front of her body less than 5% of an eight-hour day; and that Plaintiff could never reach overhead with either arm. (Tr. 501). He opined that Plaintiff was likely to be off task 25% or more of the time; that she was incapable of even low stress work; that she would have "good days" and "bad days"; and that she would be absent from work four or more days a month. (Tr. 502).

### D. Hearing Testimony

During the hearing, Plaintiff testified to the following:

- Plaintiff testified that she had not worked since 2009. (Tr. 47).

- Plaintiff testified that she could not sit for more than 10 to 15 minutes due to the pain in her back. (Tr. 55). She testified that when she began to feel pain, she had to get up and walk around or change positions. (Tr. 55). She also testified that she could not stand for more than 5 to 10 minutes; she had to lean against a wall, sit, or lie down to relive pain. (Tr. 56). Plaintiff attributed the pain to having fallen three times. (Tr. 118).

- She further testified that she had carpal tunnel in her right arm; she said the pain was worse on her right side because she's right-handed. (Tr. 57; 122). She had to wear a brace when sitting or using the computer, but she was only able to use

the computer for about 10 to 15 minutes before stopping due to back pain and the brace getting in the way of her using the keyboard. (Tr. 58).

- Plaintiff said she walked with a cane at the suggestion of her doctor. (Tr. 63). She wore braces on both wrists and took pain medication for her back, neck and carpal tunnel. (Tr. 68). Plaintiff testified that despite regular doctor visits, heat therapy, pain medication, inflammatory medication, and multiple spinal shots, she only ever experienced temporary relief. (Tr. 128).

- She testified that she cooked once in a while, but she required assistance because her carpal tunnel made it difficult for her to hold things. (Tr. 64). She also had difficulty reaching and required assistance from her husband. (Tr. 122-23). She could hold a knife and fork, but could not cut with a knife and difficulty opening certain containers and jars. (Tr. 70). Plaintiff also had difficulty cleaning, grooming and dressing herself. (Tr. 70).

The ALJ noted that Plaintiff had past work as an order clerk and a store clerk. (Tr. 72).

The ALJ then posed the following hypothetical question to the VE:

Then, now, if you would first consider a person of the claimant's age, education, and past relevant work experience with the capacity for light work who could never climb ladders, ropes, or scaffolds, never crawl, who has the ability to perform simple and some more complex tasks in a setting without frequent change, the ability to work in a setting without a requirement or sustained fast pace and without stringent time or production requirements, would that person be able to perform to any -- or be able to return to any of the jobs the claimant performed in the past?

(Tr. 73).

The VE testified the hypothetical individual would not be able to perform any past work.

*Id.* However, the VE explained the hypothetical individual would be able to perform other representative jobs in the economy, such as a cashier, counter clerk, and deli worker. (Tr. 74-75).

The ALJ's second hypothetical included all the limitations of the first hypothetical and added an occasional use of the right upper extremity for handling and fingering. The VE testified that the second hypothetical individual would be precluded from all jobs. (Tr. 75).

7

### III. STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).1

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his

past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2014.

2.  The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of August 27, 2011 through her date last insured of December 31, 2014 (20 CFR 404.1571 et seq.).

3.  Through the date last insured, the claimant had the following severe impairments: lumbar and cervical degenerative disc disease, right shoulder bursitis, and depression (20 CFR 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes and scaffolds; never crawl. She can perform simple and some more complex tasks in a setting without frequent change. She has the ability to work in a setting without a requirement for sustained fast pace and without stringent time or production requirements.

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on August 28, 1961 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 27, 2011, the amended alleged onset date, through December 31, 2014, the date last insured (20 CFR 404.1520(g)).

(Tr. 21-37).

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th

Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant

evidence is not mentioned, the Court cannot determine if it was discounted or merely

overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v.

Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D.

Ohio July 9, 2010).

## VI. ANALYSIS

### A.      Treating Physician Rule

Plaintiff maintains that the ALJ committed reversible error by failing to properly

evaluate, and provide good reasons for discounting, the opinions of treating physicians Dr.

Nickels and Dr. Rajeha.  The Court disagrees.  After an extensive discussion of Dr. Nickels'  and

Dr. Raheja's medical opinions and Plaintiff's course of treatment with them, the ALJ provided

good reasons for affording those opinions less than controlling weight.

A treating source opinion must be given "controlling weight" if such opinion (1) "is

well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is

not inconsistent with the other substantial evidence in [the] case record."  *Meece v. Barnhart*,

2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2).  However, "a

finding that a treating source medical opinion . . . is inconsistent with the other substantial

evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not

that the opinion should be rejected."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir.

2009) (quoting Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4

(Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled

to more weight than other medical opinions.)  Indeed, "[t]reating source medical opinions are still

entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §

404.1527 and 416.927." *Blakley*, 581 F.3d at 408.

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the

ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486

F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). *See

also Gayheart*, 710 F.3d at 376. The purpose of this requirement is two-fold. First, a sufficiently

clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a

claimant knows that his physician has deemed him disabled and therefore 'might be bewildered

when told by an administrative bureaucracy that she is not, unless some reason for the agency's

decision is supplied.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.

2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and

permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at

544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to

articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of

substantial evidence, even where the conclusion of the ALJ may be justified based upon the

record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical

data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d

431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581

F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a

claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id.* It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

### 1.    Dr. Nickels

Plaintiff argues that the ALJ failed to provide "good reasons" for discounting the opinion of Dr. Nickels. In particular, Plaintiff asserts that Dr. Nickels' opinion includes a "handling and fingering" limitation. Plaintiff maintains that if that limitation had been included in Plaintiff's RFC, Plaintiff would have been precluded from all work pursuant to the vocational expert's testimony. Plaintiff's argument has no merit. As described below, the ALJ provided "good reasons" for affording Dr. Nickels' opinion less than controlling weight. Further, because Dr. Nickels' opinion did not limit Plaintiff's ability to handle or finger, specifically, the ALJ had no reason to consider such a limitation.

The ALJ concluded that Dr. Nickels' opinion deserved little weight because it was inconsistent with, and unsupported by, his own treatment records and the record as a whole. (Tr.

32-33). The ALJ observed that Dr. Nickels' diagnosis of lumbar radiculopathy was not fully supported by any objective diagnostic testing. (Tr. 33). In support, the ALJ noted that an MRI dated September 11, 2013 showed disc herniation at L5-Sl but revealed no nerve compression, displacement, or impingement consistent with lumbar radiculopathy. (Tr. 646). Further, a September 20, 2013 nerve conduction study of Plaintiff's lower extremities was normal and negative for axonal denervation or segmentally demyelinating lesions that would suggest lumbar radiculopathy. (Tr. 645).

The ALJ also rejected Dr. Nickels' opinion that Plaintiff could sit for less than two hours in a day and stand and walk for less than two hours in a day and can only occasionally climb stairs. (Tr. 33). The ALJ pointed out that the treatment notes show Plaintiff has never reported problems with climbing stairs or with sitting. *Id.* Additionally, only once do the treatment records indicate that standing or walking were aggravating factors, and this was only after Plaintiff had taken a fall on August 31, 2012. (Tr. 458). And, while Dr. Nickels opined that Plaintiff must elevate her legs twelve inches for 75% of the day, the need to elevate her legs is not corroborated by the treatment records. As the ALJ pointed out, Dr. Nickels had never previously recommended that Plaintiff elevate her legs as part of her treatment. Rather, he had only recommended application of heat, exercise to tolerance, and pain management with medication. Further, Dr. Nickels indicated that back pain was the basis for his opinion, but, as noted by the ALJ, progress notes show that Plaintiff's pain was intermittent and her medication regimen controlled her pain effectively. (Tr. 452, 467, 472, 475, 477, 480).

Plaintiff does not contest the factual bases of any of the specific reasons just noted, nor does she meaningfully challenge the soundness of the ALJ's reasoning on any specific point. The

15

Court, having reviewed the record and found the ALJ's reasoning reasonably supported, concludes that the ALJ did not err in her analysis of Dr. Nickels' opinion. Furthermore, the Court rejects the only specific argument raised by Plaintiff with respect to Dr. Nickels, which relates to the ALJ's alleged failure to articulate any inconsistencies regarding Plaintiff's hand use limitations when discussing Dr. Nickel's opinion. The ALJ did not err is this respect. Contrary to Plaintiff's assertion, Dr. Nickels did not offer an opinion with respect to any "hand use limitation," and he did not cite a handling or fingering restriction. Rather, as the ALJ correctly noted, Dr. Nickels opined that Plaintiff's *ability to reach* is limited by right shoulder pain and reduced range of motion, and, significantly, the vocational expert was not questioned with respect to any reaching limitation. Social Security Rulings draw distinctions between reaching, handling, and fingering. See SSR 85-15.[4] As such, the ALJ was not required to provide a good reason for rejecting a limitation upon which Dr. Nickels did not opine.

In short, Plaintiff fails to establish that the ALJ erred in her evaluation of Dr. Nickels' opinion.

### 2. Dr. Raheja

Plaintiff also argues that the ALJ failed to properly evaluate Dr. Raheja's opinion. In particular, Plaintiff challenges the ALJ's reasoning with respect to the limitations associated with Dr. Raheja's diagnosis of carpal tunnel syndrome. This argument fails as well. Consistent with the treating physician rule, the ALJ provided good reasons for discounting the opinion of Dr.

---

[4] Reaching involves "extending the hands and arms in any direction." Handling involves "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands." Fingering involves "picking, pinching, or otherwise working primarily with the fingers."

Raheja generally. And the ALJ properly evaluated and discounted Dr. Raheja's opinion with respect to the carpal tunnel diagnosis in particular.

First, the ALJ noted the existence of internal inconsistency in Dr. Raheja's medical opinion. On the one hand, Dr. Raheja opined that Plaintiff can sit for two hours and fifteen minutes at a time; on the other, he opined that Plaintiff cannot sit for more than two hours in an entire workday. (Tr. 33, 500). The ALJ also described inconsistencies between Dr. Raheja's written opinion and his treatment notes. In his opinion, Dr. Raheja noted "the claimant's physical condition is also affected by depression and anxiety," but "his treatment notes uniformly indicate that the claimant's mood and affect is good and she is negative for anxiety." (Tr. 34, 500, 618). In addition, the ALJ determined that Dr. Raheja's opinion was lacking in supportability. In his written opinion, Dr. Raheja stated that Plaintiff must elevate her legs to forty-five degrees for 80% of the day to relieve swelling, but as noted by the ALJ, Dr. Raheja's treatment notes "make no mention of chronic swelling of the legs" nor do his notes mention "elevation of her legs as a treatment." (Tr. 34, 501). Dr. Raheja also opined that Plaintiff requires a cane to ambulate, but the treatment notes show that neither he nor any other doctor *ever* prescribed or recommended one. *Id.*

Plaintiff does not dispute that the inconsistencies noted above are reasonable bases for discounting Dr. Raheja's opinion, nor does Plaintiff contest the soundness of the ALJ's reasoning on any of these points. The Court finds the inconsistencies and lack of supportability to be an appropriate and reasonable basis for discounting Dr. Raheja's opinion. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004) (an ALJ should consider the supportability of the opinion and its consistency with the record as a whole).

However, Plaintiff specifically challenges the ALJ's rejection of Dr. Raheja's opinion that Plaintiff suffered from carpal tunnel syndrome. The ALJ concluded that this portion of the opinion was unsupported, reasoning that

> Dr. Raheja has indicated a diagnosis of carpal tunnel syndrome, but the record indicates only an MRI consistent with carpal tunnel syndrome with clinical correlation advised. The treatment notes of Dr. Raheja, however, contains no indication that the claimant has exhibited positive Tinnel's or Phalen's signs, sensory deficits, weakened grip strength or any other objective clinical finding supporting this diagnosis.

(Tr. 34).

First, while Plaintiff challenges the ALJ's conclusion, she does not dispute the noted absence of positive Tinel's or Phalen's signs in Dr. Raheja's treatment notes. Nor does she challenge the significance that the ALJ attributed to such an absence. Nor does Plaintiff take issue with the ALJ's assertion that Dr. Raheja's treatment notes contain no record of weakened grip strength or any other objective clinical finding. Upon review of the relevant portions of the record, the Court finds these assertions to be accurate and adequately supported.

Plaintiff's argument is that contrary to the ALJ's conclusion, her carpal tunnel syndrome was clinically correlated. She points out that Dr. Raheja consistently listed carpal tunnel syndrome as a diagnosis in his treatment notes and that Dr. Raheja noted Plaintiff's own "consistent complaints of negative symptoms attached to carpal tunnel syndrome." (Doc. No. 12 at 17). Although Plaintiff is correct that Dr. Raheja lists carpal tunnel syndrome a diagnosis, his treatment notes do not reflect any objective clinical or diagnostic evidence that would support the diagnosis. Medical opinions and diagnoses of treating physicians must be based on sufficient medical data. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). Here, the carpal tunnel diagnosis lacks the requisite objective support.

Plaintiff is also correct that Dr. Raheja's treatment notes include Plaintiff's subjective complaints of "negative symptoms" of carpal tunnel. The Court agrees that Plaintiff's subjective complaints are evidence that *could* be used to support a finding of physical impairment, such as carpal tunnel syndrome. However, the existence of this evidence does not change the outcome here. This is a credibility issue, and as noted in the administrative decision, the ALJ concluded that Plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible. . . ." (Tr. 31). Plaintiff has not raised the issue of credibility in her appeal, and the Court accordingly will not address it.

In short, Plaintiff has failed to establish that the ALJ's evaluation of Dr. Raheja was erroneous.

### 3. Plaintiff's generally applicable arguments

Plaintiff raises several arguments that are applicable to both Dr. Nickels and Dr. Raheja. First, Plaintiff points out that under the regulations, "when a treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source." (Doc. 12 at 15) (quoting 20 C.F.R. § 404.1527(c)(2)(ii)). Plaintiff maintains that in this case both treating physicians had reasonable knowledge of her impairments. As such, their opinions should have been afforded more weight. Although Plaintiff has correctly cited the law on this point, there is nothing under the regulations that would allow an ALJ to fully credit a source opinion that is deficient. As already discussed, consistent with the treating physician rule, the ALJ supplied adequate reasons for affording Plaintiff's treating physicians less than controlling weight. As such, the ALJ was not obligated to afford their opinions any greater weight.

Next, Plaintiff maintains that the ALJ should have given the opinions of Dr. Nickels and Dr. Raheja more weight because they were the only examining sources to offer an opinion. Under the regulations, the agency will "[g]enerally, give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 1527(c)(1). In this case, the ALJ did not err. As noted by the Commissioner, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6P. The present case presents one of those appropriate circumstances, as the state agency physicians' opinions were more consistent with the record than those of Plaintiff's treating physicians.

Plaintiff also argues that the ALJ erred by failing to consider that the opinions of her treating physicians were consistent with one another. In support, Plaintiff cites 20 C.F.R. § 404.1527(c)(4), which states "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." This regulation does not support the idea that an ALJ errs by failing to compare the opinions of a claimant's treating physicians. As discussed above, the ALJ properly considered whether Dr. Nickels' and Dr. Raheja's opinions were consistent with the record the record as a whole. Plaintiff's argument is therefore without merit.

Finally, Plaintiff maintains that the ALJ erred by relying on her own "lay analysis" of raw medical data to discount the opinions of her treating physicians. Although an ALJ is required to consider their "the qualifications of the experts, the opinions' reasoning, their reliance on objectively determinable symptoms and established science, their detail of analysis, and their

freedom from irrelevant distractions and prejudices," *Underwood v. Elkay Mining*, 105 F.3d 946, 951 (4th Cir.1997), an ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir.2006); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) (stating "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

In the present case, Plaintiff fails to precisely explain how the ALJ improperly relied on her own lay analysis of raw medical data, and the court concludes that the ALJ did not so err. Under the regulations, the ALJ may consider whether a treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2). In this case, as described above, the ALJ properly evaluated the treating sources opinions by determining that their opinions were unsupported by, and inconsistent with, their own treatment notes and the record as a whole.

In sum, Plaintiff has failed to establish that the ALJ erred when she afforded less than controlling weight to the opinions of Dr. Nickels and Dr. Raheja.

**B.      Limitations as to Hands and Arms**

Plaintiff argues that the ALJ erred in failing to include any limitations with respect to Plaintiff's ability to use her hands and arms. This assignment of error has no merit. The source of the limitations to which Plaintiff refers were the medical opinions of Dr. Nickels and Dr. Raheja. As described at length above, the ALJ properly evaluated both opinions and assigned

them little weight.  As a consequence, because Plaintiff cites no other basis for the inclusion of

the claimed limitations, the ALJ did not error in excluding the limitations from Plaintiff's RFC.

## VII.    CONCLUSION

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.


       *s/Jonathan D. Greenberg*
       Jonathan D. Greenberg
       United States Magistrate Judge

Date: <u>May 5, 2017</u>

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**